# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO:   15-_____ |
| v. | : | DATE FILED:   _____ |
| WILLIAM J. O'BRIEN III<br>ANGELA RONGIONE | : | VIOLATIONS: |
| | : | 21 U.S.C. § 846 (conspiracy to distribute controlled substances – 1 count) |
| | : | 21 U.S.C. § 841 (distribution of controlled substances – 26 counts) |
| | : | Notice of forfeiture |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1.      Defendant WILLIAM J. O'BRIEN III was a doctor of osteopathic medicine licensed by the Commonwealth of Pennsylvania and held Pennsylvania medical license number OS008318L, and DEA registration number BO3937781.   Defendant O'BRIEN practiced out of offices located at 9892 Bustleton Avenue, Suite 104, Philadelphia, Pennsylvania and 49 Rolling Lane, Levittown, Pennsylvania.

2.      Defendant ANGELA RONGIONE was employed by defendant WILLIAM J. O'BRIEN III as his receptionist.   Defendant RONGIONE worked at defendant O'BRIEN's offices located at 9892 Bustleton Avenue, Suite 104, Philadelphia, Pennsylvania and 49 Rolling Lane, Levittown, Pennsylvania.

3.      The Controlled Substances Act governs the manufacture, distribution, and dispensing of controlled substances in the United States.   Under the Controlled Substances Act, there are five schedules of controlled substances – Schedules I, II, III, IV, and V.   Controlled substances are scheduled into these levels based upon their potential for abuse, among other things.   For example, abuse of Schedule II controlled substances may lead to severe psychological or physical dependence.   Abuse of Schedule III controlled substances may lead to moderate or low physical dependence or high psychological dependence.   Abuse of Schedule IV controlled substances may lead to more limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule III.

4.      Oxycodone is an opioid medication that is similar to morphine and is classified as a Schedule II controlled substance.   Oxycodone is used to treat moderate to severe pain.   Oxycodone contains a narcotic and even if taken only in prescribed amounts, can cause physical and psychological dependence.   At high doses, oxycodone can cause life threatening conditions or death, especially if used in combination with other narcotics or alcohol.   Oxycodone is often used in combination pain relief drugs such as acetaminophen, commonly known by the band name Percocet, which is also classified as a Schedule II controlled substance.   Percocet is used to treat moderate to moderately severe pain, and contains two drugs, acetaminophen and oxycodone.   Percocet contains a narcotic and even if taken only in prescribed amounts, can cause physical and psychological dependence when taken for a long time.

5.      Alprazolam, more commonly referred to by one of its brand names, Xanax, is the generic name for an addictive prescription sedative and anti-anxiety agent that is classified as a Schedule IV controlled substance.

6.      Title 21, United States Code, Section 841(a)(1), provides that "[e]xcept as

2

authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally ... manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance."

7.      Title 21, United States Code, Section 802(10), provides that the term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for delivery.

8.      Title 21, United States Code, Section 821, provides that "[t]he Attorney General [of the United States] is authorized to promulgate rules and regulations relating to the registration and control of the manufacture, distribution and dispensing of controlled substances."

9.      The Attorney General of the United States has exercised his rulemaking authority regarding the dispensing of controlled substances through the promulgation of 21 Code of Federal Regulations § 1306.04, governing the issuance of prescriptions, which provides, among other things, that a prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.   Moreover, an order purporting to be a prescription issued not in the usual course of professional treatment is not a prescription within the meaning and intent of section 309 of the Act [21 U.S.C. § 829] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

3

10.     The Pennsylvania Code of Professional and Vocational Standards, Title 49, Chapter 16.92, defines the authority of physicians licensed by the Commonwealth of Pennsylvania to prescribe or dispense controlled substances.   Chapter 16.92 provides in pertinent part:

(a)     A person licensed to practice medicine and surgery in this Commonwealth or otherwise licensed or regulated by the Board, when prescribing, administering or dispensing controlled substances, shall carry out, or cause to be carried out, the following minimum standards:

(1)     Initial medical history and physical examination....   [B]efore commencing treatment that involves prescribing, administering or dispensing a controlled substance, an initial medical history shall be taken and an initial examination shall be conducted unless emergency circumstances justify otherwise.   Alternatively, medical history and physical examination information recorded by another health care provider may be considered if the medical history was taken and the physical examination was conducted within the immediately preceding thirty days. The physical examination shall include an evaluation of the heart, lungs, blood pressure and body functions that relate to the patient's specific complaint.

(2)     Reevaluations.   Among the factors to be considered in determining the number and the frequency of follow-up evaluations that should be recommended to the patient are the condition diagnosed, the controlled substance involved, expected results and possible side effects.   For chronic conditions, periodic follow-up evaluations shall be recommended to monitor the effectiveness of the controlled substance in achieving the intended results.

(3)     Patient counseling.   Appropriate counseling shall be given to the patient regarding the condition diagnosed and the controlled substance prescribed, administered or dispensed.   Unless the patient is in an inpatient care setting, the patient shall be specifically

4

counseled about dosage levels, instructions for use, frequency and duration of use and possible side effects.

(4)     Medical Records.   [C]ertain information shall be recorded in the patient's medical record on each occasion when a controlled substance is prescribed, administered or dispensed.   This information shall include the name of the controlled substance, its strength, the quantity and the date it was prescribed, administered or dispensed to a patient.   The medical record shall also include a specification of the symptoms observed and reported, the diagnosis of the condition for which the controlled substance is being given and the directions given to the patient for the use of the controlled substance.   If the same controlled substance continues to be prescribed, administered or dispensed, the medical record shall reflect changes in the symptoms observed and reported, in the diagnosis of the condition for which the controlled substance is being given and in the directions given to the patient.

11.     Accordingly, as a doctor of osteopathic medicine, defendant WILLIAM J. O'BRIEN III was authorized to dispense to patients Schedules II, III, IV and V controlled substances and to prescribe medicine to patients, including controlled substances, for legitimate medical purposes and in the usual course of professional practice.

12.     In actuality, defendant WILLIAM J. O'BRIEN III, with the assistance of defendant ANGELA RONGIONE, ran a "pill mill" out of defendant O'BRIEN's offices, at which so-called "patients" could for a fee obtain prescriptions for controlled substances without there being any medical necessity for these controlled substances.

## THE CONSPIRACY

13.     From at least in or about January 2014, until in or about December 2014, in Philadelphia, in the Eastern District of Pennsylvania, defendants

5

**WILLIAM J. O'BRIEN III and**
**ANGELA RONGIONE**

conspired and agreed together to commit the following offenses against the United States:

        a.      to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C); and

        b.      to knowingly and intentionally distribute and dispense, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of alprazolam, a Schedule IV controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(E).

## MANNER AND MEANS

It was part of the conspiracy that:

14.     Defendant WILLIAM J. O'BRIEN III sold prescriptions for Schedule II, Schedule III, Schedule IV, and Schedule V controlled substances from his office at 9892 Bustleton Avenue, Suite 104, Philadelphia, Pennsylvania, to cash-paying customers outside the usual course of professional practice and for no legitimate medical purpose.

15.     The customers of defendant WILLIAM J. O'BRIEN III received no physical examination or any other medical care or treatment from defendant O'BRIEN before purchasing prescriptions for controlled substances.

16.     Defendant WILLIAM J. O'BRIEN III typically charged customers approximately $250 cash for the first appointment to obtain narcotics prescriptions and approximately $200 cash for each subsequent appointment.   Defendants O'BRIEN and

ANGELA RONGIONE referred to this as the customer's "co-pay" to disguise the true nature of the payment.

17.     Defendant ANGELA RONGIONE assisted defendant WILLIAM J. O'BRIEN III in operating his pill mill operation.   Among other things, defendant RONGIONE screened defendant O'BRIEN's customers, scheduled appointments for defendant O'BRIEN, collected cash from customers, and kept records of the prescriptions sold by defendant O'BRIEN.

18.     Defendant WILLIAM J. O'BRIEN III falsified "medical" records to make it look as though defendant O'BRIEN's customers had received physical examinations and medical treatment from defendant O'BRIEN when in fact they had not.

19.     To avoid detection by law enforcement, customers of defendant WILLIAM J. O'BRIEN III were instructed to fill prescriptions purchased from defendant O'BRIEN at pharmacies located at a distance from defendant O'BRIEN's offices.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, defendants WILLIAM J. O'BRIEN III and ANGELA RONGIONE committed the following overt acts, among others, in the Eastern District of Pennsylvania:

20.     On or about January 30, 2014, in Philadelphia, defendant WILLIAM J. O'BRIEN III knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, by selling a prescription for Percocet to Person # 1, who is known to the grand jury.

21.     On or about January 30, 2014, in Philadelphia, defendant ANGELA RONGIONE collected $200 cash from Person #1 before escorting Person #1 to a private room to

obtain prescriptions for controlled substances from defendant WILLIAM J. O'BRIEN III.

Defendant RONGIONE instructed Person #1 that the prescriptions that Person #1 had received

from defendant O'BRIEN should not be filled at any pharmacy located near the office.

22.     On or about the dates listed below, in Philadelphia, defendant WILLIAM J.

O'BRIEN III knowingly and intentionally distributed and dispensed, outside the usual course of

professional practice and for no legitimate medical purpose, a mixture and substance containing a

detectable amount of oxycodone, a Schedule II controlled substance, by selling prescriptions for

oxycodone to Person #1 as follows:

| APPROXIMATE DATE OF PRESCRIPTION | Quantity in 20 mg Tablets | Quantity in 30 mg Tablets |
|---|---|---|
| April 3, 2014 | 60 | |
| April 24, 2014 | 60 | |
| May 15, 2014 | 90 | |
| June 2, 2014 | 90 | |
| June 19, 2014 | 90 | |
| July 10, 2014 | 120 | |
| August 7, 2014 | - | 90 |
| August 28, 2014 | - | 120 |
| September 18, 2014 | - | 120 |
| October 9, 2014 | - | 120 |
| October 30, 2014 | - | 120 |

8

23.     On or about April 3, 2014, April 24, 2014, and October 9, 2014, in Philadelphia, defendant ANGELA RONGIONE collected $200 cash from Person #1 before directing Person #1 to a private room to obtain prescriptions for controlled substances from defendant WILLIAM J. O'BRIEN III.

24.     On or about the dates listed below, in Philadelphia, defendant WILLIAM J. O'BRIEN III knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, by selling prescriptions for oxycodone to Person #2, who is an undercover FBI agent known to the grand jury, as follows:

| APPROXIMATE DATE OF PRESCRIPTION | Quantity in 30 mg Tablets |
|---|---|
| August 7, 2014 | 120 |
| September 4, 2014 | 120 |
| October 2, 2014 | 180 |
| October 30, 2014 | 180 |
| November 24, 2014 | 180 |

25.     On or about August 7, 2014, in Philadelphia, defendant ANGELA RONGIONE collected $250 cash from Person #2 who posed as a "walk-in" patient seeking controlled substances.   Defendant RONGIONE advised Person #2 that each subsequent appointment with defendant WILLIAM J. O'BRIEN III would cost $200 cash.   After she collected the cash, defendant RONGIONE escorted Person #2 to a private room to obtain prescriptions for controlled substances from defendant O'BRIEN.

9

26.     On or about the dates listed below, in Philadelphia, defendant WILLIAM J. O'BRIEN III knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of alprazolam, a Schedule IV controlled substance, by selling prescriptions for Xanax to Person #1, as follows:

| APPROXIMATE DATE OF PRESCRIPTION | Quantity in Pills | No. Refills | Total Quantity |
|---|---|---|---|
| May 15, 2014 | 40 | 1 | 80 |
| June 2, 2014 | 60 | 5 | 360 |
| June 19, 2014 | 90 | 5 | 540 |
| September 4, 2014 | 60 | - | 60 |
| October 2, 2014 | 60 | - | 60 |
| October 30, 2014 | 60 | - | 60 |
| November 20, 2014 | 60 | - | 60 |
| November 24, 2014 | 60 | - | 60 |

27.     On or about the dates listed below, in Philadelphia, defendant WILLIAM J. O'BRIEN III knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of alprazolam, a Schedule IV controlled substance, by selling prescriptions for Xanax to Person #2, as follows:

10

| APPROXIMATE DATE OF PRESCRIPTION | Quantity in Pills |
|---|---|
| September 4, 2014 | 60 |
| October 2, 2014 | 60 |
| October 30, 2014 | 60 |
| November 24, 2014 | 60 |

28.     As part of the continuing conspiracy, defendant WILLIAM J. O'BRIEN III also was willing to exchange favors for higher doses of narcotics.   For example, on or about October 2, 2014 in a tape recorded meeting with Person #2, defendant O'BRIEN offered to trade a prescription for oral sex.

All in violation of Title 21, United States Code, Section 846.

11

## COUNTS TWO THROUGH NINETEEN

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    Paragraphs 1 through 12 and 14 through 19 and the overt acts of Count One are incorporated here.

      2.    On or about each of the dates listed below, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### WILLIAM J. O'BRIEN III

knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance (each distribution constituting a separate count of this indictment):

| COUNT | APPROXIMATE DATE OF PRESCRIPTION |
|-------|----------------------------------|
| 2 | April 3, 2014 |
| 3 | April 24, 2014 |
| 4 | May 15, 2014 |
| 5 | June 2, 2014 |
| 6 | June 19, 2014 |
| 7 | July 10, 2014 |
| 8 | August 7, 2014 |
| 9 | August 7, 2014 |
| 10 | August 28, 2014 |
| 11 | September 4, 2014 |

| COUNT | APPROXIMATE DATE OF PRESCRIPTION |
|-------|-----------------------------------|
| 12 | September 18, 2014 |
| 13 | October 2, 2014 |
| 14 | October 9, 2014 |
| 15 | October 30, 2014 |
| 16 | October 30, 2014 |
| 17 | November 20, 2014 |
| 18 | November 24, 2014 |
| 19 | December 15, 2014 |

All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

## COUNTS TWENTY THROUGH TWENTY SEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 12 and 14 through 19 and the overt acts of Count One are incorporated here.

2.     On or about each of the dates listed below, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### WILLIAM J. O'BRIEN III

knowingly and intentionally distributed and dispensed, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable amount of alprazolam, a Schedule IV controlled substance (each distribution constituting a separate count of this indictment):

| COUNT | APPROXIMATE DATE OF PRESCRIPTION |
|-------|----------------------------------|
| 20 | May 15, 2014 |
| 21 | June 2, 2014 |
| 22 | June 19, 2014 |
| 23 | September 4, 2014 |
| 24 | October 2, 2014 |
| 25 | October 30, 2014 |
| 26 | November 20, 2014 |
| 27 | November 24, 2014 |

All in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(E).

14

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.    As a result of the violations of Title 21, United States Code, Sections 846 and 841(a)(1) set forth in this indictment, defendants

**WILLIAM J. O'BRIEN III and**
**ANGELA RONZIONE**

shall forfeit to the United States of America:

       (a)    any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses;

       (b)    any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offenses.

       2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

       (a)    cannot be located upon the exercise of due diligence;

       (b)    has been transferred or sold to, or deposited with, a third party;

       (c)    has been placed beyond the jurisdiction of the Court;

       (d)    has been substantially diminished in value; or

       (e)    has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the property subject to forfeiture.

All pursuant to Title 21, United States Code, Section 853.

**A TRUE BILL:**

_____
**GRAND JURY FOREPERSON**

**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**

16