IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 15-00021-1 |
| WILLIAM J. O'BRIEN III | : | |

**ORDER**

AND NOW, this       day of April, 2016, upon consideration of the defendant's Motion for "Rough Notes," [Doc. No. 374], and the Government's Response, it is hereby ORDERED that the Defendant's Motion is DENIED.

BY THE COURT:

_____

Honorable Nitza I. Quiñones Alejandro
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :

v. : CASE NO. 15-00021- 1

WILLIAM J. O'BRIEN III :

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR "ROUGH NOTES"

The United States of America, by and through its attorneys Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and M. Beth Leahy and David E. Troyer, Assistant United States Attorneys, responds to defendant O'Brien's motion for "Rough Notes." [Doc. No. 3741, entered March 16, 2016]. The defendant has repeatedly claimed that Rule 16 of the Federal Rules of Criminal Procedure requires the government to produce the rough notes of agents who conducted interviews of witnesses. The defendant is incorrect, and his motion should be denied.

The production of handwritten notes of agents[2] who interviewed witnesses should not be provided in discovery. Title 18, United States Code, Section 3500, commonly known as the *Jencks* Act, compels production of grand jury transcripts, along with any other witness

---

[1] The defendant filed multiple motions in a single document. [Doc. No. 374]. The government responds only to the specific request for agent notes. The defendant's other requests have already been addressed by the government and the Court.

[2] Under Rule 16(a)(1)(B)(ii), rough notes of interviews of a defendant are treated differently than notes of interviews of other witnesses. The Rule provides that upon request, the handwritten notes of a defendant interview shall be provided to the defendant. In this case, even though the defendant's interview was videotaped and produced to him in full, along with a transcript, the government has also provided the agent's notes of interview, attached hereto as Exhibit A.

"statements," as defined in the Act, only after the witness has testified at trial.[3] *United States v. Hill*, 976 F.2d 132, 139 (3d Cir. 1992).

As set forth in *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978)(superseded by statute):

> "the Jencks Act flatly states that disclosure of prior statements by government witnesses may not be compelled "until said witness has testified on direct examination in the trial of the case" . . . The blunt command of the statute together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial . . . " *Id.*

Handwritten notes of witness interviews are subject to production only if they constitute statements falling under the *Jencks* Act or contain *Brady* material.[4] *United States v. Ramos*, 27 F.3d 65, 68-70 (3d Cir. 1994). In *Ramos*, the Third Circuit reaffirmed its prior directive that the government preserve all notes of interviews with witnesses in criminal cases.[5] However, the *Ramos* Court explained that this rule exists only to permit prosecutors and then, if necessary, trial judges, to review the notes to assure that no *Jencks* or *Brady* material is present in the notes. *Id.* If no such material exists in the notes, the notes are not produced to the defense.[6]

---

[3] Nonetheless, in this case, the government has produced grand jury transcripts, and reports of witness interviews, which are not *Jencks* materials of the witnesses, months in advance of trial, as is normally done as an accommodation in this district, *See United States v. Murphy*, 569 F.2d at 773, n.5 (3d Cir. 1978) (commenting favorably on voluntary practice of the United States Attorney turning over *Jencks A*ct material in advance of trial).

[4] The government has reviewed the rough notes of trial witness interviews, which were used as aids to memory by the agents in order to prepare the formal reports of interview which provide a summary of the interviewees' accounts. Those rough notes do not contain *Brady* material not included in the typewritten reports provided to defense.

[5] Consistent with applicable law, the agents' notes have been preserved. *See United States v. Vella*, 562 F.2d 275 (3d Cir. 1977).

[6] As stated above, the government submits, that after reviewing the agents' notes of interviews for trial witnesses, the handwritten notes do not contain *Jencks* or *Brady* material, not already provided in the formal reports, and are available for this Court to review *in camera* should the Court desire to do so.

Indeed, it is the rare case in which interview notes amount to a *Jencks* statement. The *Jencks* Act states a very limited and exclusive definition of the class of "statements" that must be produced, that are as follows:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). The handwritten agent notes requested by the defendant do not fall under any of the categories of "statements" in the Act.

The purpose of the *Jencks* Act was to limit defense access to government materials. "The Act's major concern is with limiting and regulating defense access to government papers, and it is designed to deny such access to those statements which do not satisfy the requirements of (e), or do not relate to the subject matter of the witness' testimony." *Palermo v. United States*, 360 U.S. 343, 354 (1959). The key limitation is that only statements that represent the witness' own words, either because they were written or adopted by him, or because they are "substantially verbatim" transcripts, are to be produced. "[I]t was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be seen to be the witness's own rather than the product of the investigator's selections, interpretations, and interpolations." *Id.* at 350; *see also Goldberg v. United States*, 425 U.S. 94, 127-28 (1976) (Powell, J., concurring) (because trial testimony rarely conforms precisely to what a witness has said earlier, it is unfair to question the witness regarding any earlier statement that is not unquestionably his).

Thus, interview notes - even those later recorded in typewritten format as were provided here - rarely qualify as Jencks statements. To fall under subsection (e)(1), they must be adopted by the witness. The requirement of adoption demands that the witness sign or otherwise formally approve the statement. *Gov't of Virgin Islands v. Lovell,* 410 F.2d 307, 310 (3d Cir. 1969). "This requirement clearly is not met when the lawyer [or agent] does not read back, or the witness does not read, what the lawyer [or agent] has written." *Goldberg v. United States,* 425 U.S. 94, 110 n.19 (1976); *accord United States v. Wolfson,* 302 F. Supp. 798, 817 (D. Del. 1971), *aff'd,* 454 F.2d 60 (3d Cir. 1972); *United States v. Newman,* 849 F.2d 156, 160 (5th Cir. 1988); *United States v. Pisello,* 877 F.2d 762, 768 (9th Cir. 1989).

In this case, the typewritten reports of interview were not approved or adopted by the witness, and were never signed by them. Interview notes also hardly ever qualify as "substantially verbatim" statements under subsection (e)(2). "Typical interview notes are selective -- even episodic -- and therefore fall outside of subsection (e)(2)." *Goldberg v. United States,* 425 U.S. 94, 126 (1976) (Powell, J., concurring). Even where brief, precise quotations are included, that is "inadequate to qualify the notes as *Jencks* material." *United States v. Gross,* 961 F.2d 1097, 1105 (3d Cir. 1992).

In fact, using this standard, even the formal interview reports already provided are not properly *Jencks* material, but in the interest of over-disclosure, the government provided these typewritten reports of all trial witnesses to the defendants.[7]

---

[7] While it is the practice of the United States Attorney's Office in this district to produce such interview reports (known as FBI 302s, and the like) to the defense before trial, it must be recognized that this practice also is not required by law. Courts have held unanimously that interview reports such as those prepared here are not *Jencks* material. *See, e.g., United States v. Allegrucci,* 299 F.2d 811, 813 (3d Cir. 1962); *United States v. Starusko,* 729 F.2d 256, 263 (3d Cir. 1984); *United States v. Foley,* 871 F.2d 235, 238-39 (1st Cir. 1989) (FBI 302's were not *Jencks* statements, where they plainly were not substantially verbatim; it is irrelevant that the agent

Finally, the defendant is required to make a *prima facie* showing of the existence of a "witness statement" as defined above [in the handwritten notes] that has not been disclosed, to require the Court to review the statement *in camera* to determine if it is producible. *United States v. Smith*, 984 F.2d 1084, 1086 (10th Cir. 1993); *see also United States v. Sanchez-Gonzales*, 294 F.3d 563, 568 (3d Cir. 2002) (citing *Smith* favorably). Therefore, as a threshold matter, the defendant has not met his burden to warrant a request for the Court to conduct an *in camera* review of agents' handwritten notes.

WHEREFORE, for the foregoing reasons, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


/s/ M. Beth Leahy
M. Beth Leahy
David E. Troyer
Assistant United States Attorneys

---

was a "punctilious" note taker who often asked the witness to slow down, and read portions back to the witness to assure that the notes were correct); *United States v. Ricks*, 817 F.2d 692, 697-98 (11th Cir. 1987); *United States v. Paden*, 787 F.2d 1071, 1077-78 (6th Cir.1986); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985); *United States v. Edwards,* 702 F.2d 529, 531 (5th Cir. 1983).

# EXHIBIT A

Case 2:15-cr-00021-NIQA   Document 430   Filed 04/18/16   Page 7 of 13

William J O'Brien III                                         1-29-15
- advice of rights · 10 20 AM
- every patient does exam / positive MRI
    patient yesterday to oxy a day
       phone call from female - selling
          - test showed hits on multiple drugs
          - cutoff from scripts
- if WOB sees someone he will write script continuously - won't write on initial visit
- asks if they are stable
- person needs less - write less
- person needs more - tries not to write
- drug seeking patient if they have exams & MRI's positive
       - drug addict patients - doesn't want to be involved w/
       - if someone is patient who is addicted and need drugs b/c medical ailment
                                                                    - Will write scripts
    Ex - Anne Marie Dowd (phnco) - morph - combination
       - Tommy Dowd - metho
- Winter months scripts higher ; sum
- makes medical decision to determine whether they need script for chronic pain
- Robert Babdino - kidney stones. oxy script given
                 - cutoff b/c took all pills quickly before script over
- Xanax · will write script if ppl are in controlled setting
       - asks if they have taken peach / blue
          - 50-100 patients taken
- Ed Szukenitz ·
- Pagan's Motorcycle Clubs - write scripts for accidents - 6/7 Pagans
 (Bucks County Judge
       - met some in South Philly - they would then refer
       - if they needed treatment - would treat
       - higher index of suspicion
          - typically rec'd through referrals

② 

O Brien                                                                                                           1-29-15
- be surprised if Physicians were selling pills
- headache - Motrin / Ty / Asp
    - Xanax / Prozac / Perc
        - will write + monitor - acceptable to give Schedule 2 for
        - taking 4 a day for headache - acceptable
        - having red hair set lady / 50's / out of Bustleton - headaches everyday
            - scribed oxy 30's   3/4 a day
            - believes seen specialist (neurologists) - perc 10
            - did give her narcotics           - saw initial - scribed - come back
              stable - says feels better      needed more - wrote more
            - Scribe' 6 months / 1 yr         - 90 pills a month
        - 2 patients w/ migraines   hyperbollic chamber - 2 weeks - fine
            - try to get 70% relief
            - if someone taking 3/4 day oxy - pain is managed -
          can continue writing at that amount
              - always writing scribes - blood thinners / heart med / Schedule 2
                - writes scribes heavily
                - always believed he will give narcotics script to
                  someone who doesn't need
                - if have to write 20 - give 40
    - Shadde Abusedd treatments on back
              - in pain
- Oxy 30's made for sever pain
- didn't believe women who asked for oxy for headaches
  was asking
    - look at notes - previous   - writes scripts

    - Tyrell Garrett - 70's - chronic pain - refills as treatment
      - sees every month b/c class / Schedule 2

③

O'Brien                                                                                      1-29-15

- Most common drugs scribed
    1) - narco - most popular -
    2) - benzo -
    3) stimulants
       - metham - add
- come in w/ headaches - checked by neurologist - then depends on where pain is located
    - Dr Louis Pearlstein (neurologist)
    - alot of ppl like narcotics - get high/relieve pain
    - if someone taking 3/4 oxy day - addicted to medication
        - functioning - acceptable
- took over Dr Davidson Office
    - women in her 80's taking narcotics years
        - kept scribing
- oxy - opium based narco
    - would continue to give script despite addiction as long as functional
    - addicted and not functional - stops writing
- will provide metho for pain
- 1/3 of patients are addicted to medication scribed
- have had sex w/ patients
    - patient would say "I will take care of you"
    - would already be treating
    - past 6/7 yrs sex w/ 4/5
    - "Blue for Blow" doesnt -
        - ~~nice~~ if heavy set body - wanted Xanax - her suggestion
                                          - young 23/24
    - ppl/patients come in asking for specific drugs - could be legit patient
    - "Blue for Blow" - sex for drugs/scripts -
- Schedule 2 needs to be written by physician
- some say take drugs illegally but functional will continue to write scripts legally

④

'Bruen                                                                                                                1-28-15

- Dowd Family - 4 ppl - all taking scripts
    - adder: helps take tests - increase grades
- patient who used/purchased medication illegally, but have legit condition will write scripts
- every patient must have documentation for chart to receive treatment
    - every chart will have imaging studies
    - will write script until they get imaging studies of in pain
- if patient receiving narco from another dr (double dip) - cutoff
- 1/3 general / 1/3 injury / 1/3 chronic pain
- young lady - sexual favors - 3/4 times - came in w/ young friend - didnt write
    - sever headaches - no MRI - taking Aunts medication
    - **wrote script** medication
    - not taking medicine appro
        - taking less - or - getting medication from someone else
    - Aunt worried niece use of medication (not scribed)
    - Aunt asked to see her
    - believed she needed medication
- Olivia Hendericks - patient - taking medication
    - wrote father higher script b/c of cancer
- no patient would say running pill mill
- staff members have written narco scripts
    - if saw someone previously - already patient
    - patient ran out of medication   talk to Angela - write script (already signed)
       place in chart - not changing anything - **approved over the phone**
- go to FL (14 times last yr)                                                - maybe 1/2 a yr
    - Monday thru Friday
    - Fly to FL on weekends
- Angela - being treated - asked to resign b/c
    - had 3 months of med for multiple accidents



O'Brien                                                                                          1-24-15

- saw after accident  - medication atleast 2 yrs
- treated & saw 50 times
- appears to be in alot of pain - addicted to medication
- would stop - go through w/drawal
- paid 12 per/hr  - 2,000 severance pay  resigned in Dec
- most patients - chronic pain - pay cash
- insurance difficult to work w/ b/c they conduct their own investigations
- most patients - 95% working - 200 per visit
   come in every months
- urine tests - if someone tests ~~post~~ negative

signs
- Jason Demour - oxy 30's - bad foot injury
- Patrick Tracy - oxy 30's - previous right leg fracture
- Vincent Palozzo - oxy 30's/20's/50's - back
- Jonathan Bucheio - oxy 30's - hip
- David Babilino - oxy 30's & xanax - back
   - ~~boy~~
- every patient seen need medication - all vetted/referred
- never suggested sexual ~~favors~~ for medication
   - have had females suggest before - already given scripts prior - had/would
     sexual relations
        - should stop seeing as patient - but would stop having sex

CERTIFICATE OF SERVICE

I hereby certify that this pleading was electronically filed and mailed, and was thus served on the 18th day of April, 2016, upon the defendant and stand-by counsel:

William J. O'Brien III
BOP Reg. No. 71915-066
FDC Philadelphia
Philadelphia, PA

George H. Newman, Esquire
100 South Broad Street
Suite 2126
Philadelphia, PA 19110

          s/ M. Beth Leahy
          M. BETH LEAHY
          Assistant United States Attorney

Date:  April 18, 2016